UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRED D. HERMANN, | Case No. 2:18-cv-00462-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| STIMSON LUMBER COMPANY, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant Stimson Lumber Company's ("Stimson") Motion for Summary Judgment (Dkt. 32), as well as Plaintiff Fred D. Hermann's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (Dkt. 35), Motion to Seal the Motion for Summary Judgment (Dkt. 36), and Motion Requesting a Daubert Hearing (Dkt. 45). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons below, the Court finds good cause to GRANT Stimson's Motion for Summary Judgment and DENY Hermann's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment and Motion Requesting a

Daubert Hearing.[1]

## II. BACKGROUND[2]

On August 11, 2016, Stimson hired then forty-nine-year-old Hermann to work at its Plummer, Idaho facility, which employed approximately 100 employees. Some employees at the Plummer facility, including Hermann, would regularly engage in "horseplay and joking," an innocuous label used to describe such inappropriate actions as touching and grabbing another's behind, mimicking various sexual acts, and openly discussing the male genitalia. Some of these employees were close in age to Hermann, *i.e.* over forty years in age, whereas others were much younger. Regardless of age, all employees apparently understood that such behavior was not permitted and were careful to never engage in their "horseplay" in front of management.

In May of 2017, Rusty Higbee, a manager who supervised Hermann and twenty-one other employees, heard rumors about these inappropriate behaviors. Higbee then held an all-staff meeting and instructed all employees to immediately stop the inappropriate sexual behaviors.

After this meeting, Stimson received only a single complaint that someone continued to engage in this type of "horseplay." On July 24, 2017, Hermann's co-worker PJ Orsburn complained to Higbee that Hermann was making sexual gestures toward

---

[1] As Hermann's Motion to Seal the Motion for Summary Judgment is proper, the Court hereby GRANTS it.

[2] The facts are drawn from both motions for summary judgment. The facts given will be neutral, but as these are competing motions for summary judgment, in its analysis the Court construes all facts in the light most favorable to each party, respectively. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Orsburn and others, grabbing Orsburn's crotch from behind and "dry humping" him, and repeatedly opening the bathroom stall while Orsburn was using the toilet. Additionally, Orsburn reported that Hermann had exposed himself and told Orsburn to look at Hermann's balls and had grabbed a different co-worker on the backside while the co-worker was using the restroom.

Orsburn followed up by providing a written statement, further reporting that during the week of June 3, 2017, Hermann had exposed himself to Orsburn while they were working in the computer room, and that the next week Hermann stood outside the bathroom stall while Orsburn was using the toilet and stated that he wanted to "fuck [Orsburn] in the ass." Dkt. 32-1, at 4. Hermann then opened the bathroom stall and stared at Orsburn's penis.

Following these allegations, Higbee and another Stimson manager interviewed individuals in the workgroup and received mixed results. In the interview with Hermann, Hermann denied Orsburn's allegations that he had exposed himself, grabbed anyone, or "dry humped" any of his coworkers. Noah Loibl, a co-worker whose backside Hermann had allegedly grabbed, told Higbee that he didn't remember seeing any inappropriate behavior in the workplace, that all he saw was "guys being guys." Dkt. 32-4, at 13. However, Perry O'Brien, another co-worker, corroborated Orsburn's story. O'Brien stated that he often heard Hermann make inappropriate comments about having anal sex with Loibl and Orsburn and that Hermann regularly asked to see Orsburn's "junk." Dkt. 32-4, at 10. O'Brien also witnessed Hermann follow Orsburn and Loibl into the bathroom on several occasions, and on one of these occasions he overheard Loibl yelling at Hermann to

MEMORANDUM DECISION AND ORDER – 3

stop what he was doing, which O'Brien assumed to mean that Hermann was opening an occupied bathroom stall.

Higbee escalated the matter to Stimson's corporate Human Resources department. Stimson Human Resource manager Crystal Gonzales conducted a full investigation. Gonzales interviewed the same employees Higbee had interviewed and received the same results: Orsburn admitted that he had engaged in "horseplay," but stated that while he and almost everyone ceased their inappropriate behaviors after Higbee told them to, Hermann was the only employee who not only persisted in but increased the inappropriate behavior. Loibl admitted to Gonzales that he had heard Hermann make sexual remarks about Loibl and Orsburn but stated that he believed that employees should not "rat" on people because it was "just guys being guys." Dkt. 32–2, at 7. O'Brien confirmed to Gonzales that he had heard Hermann tell Loibl that he (Hermann) had exposed himself to Orsburn, and O'Brien also stated that he personally observed Hermann grab Loibl's backside and open Loibl's bathroom stall.

At the conclusion of her investigation, Gonzales noted that the complaint against Hermann was the only complaint that Stimson had received, and that all employees, other than Hermann, had put an end to their "horseplay" after Higbee had told them to stop. Gonzales also found, based on reports from Stimson management and employees, that O'Brien was a person who could be trusted and would not fabricate events. All in all, Gonzales recommended termination of Hermann's employment. Gonzales forwarded the investigation materials and summary to Stimson Vice President and Chief Operating

Officer Dan McFall, who approved the termination decision. McFall never knew Hermann's age. On August 11, 2017, Stimson terminated Hermann for his alleged conduct.

Hermann filed his Complaint on October 21, 2018, after properly exhausting his administrative remedies through the Idaho Human Rights Commission and the EEOC. Hermann alleges one count of federal age discrimination under the Age Discrimination in Employment Act ("ADEA") and one count of state age discrimination under Idaho Code section 67-5901, *et seq*. Near the end of the discovery period, Hermann's attorney withdrew from the case. Dkt. 25. Hermann elected to proceed with his case *pro se*. Dkt. 30. Stimson filed a motion for summary judgment on October 18, 2019. Dkt. 32. Hermann then filed his own motion for summary judgment a few days later on October 22, 2019. Dkt. 35.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). However, there must be a *genuine* dispute of a material fact to preclude summary judgment. Fed. R. Civ. P. 56(a) (emphasis added). A party may not simply state that a fact is disputed, but they must support that assertion by citing to particular parts of materials in the record. *Id.*

at 56(c)(1).

In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment—where both parties essentially assert that there are no material factual disputes—does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

## IV. ANALYSIS

### A. Hermann's Motion for a *Daubert* Hearing.

Hermann also filed a Motion Requesting a Daubert Hearing. Dkt. 45. In this motion,

Hermann alleges that he took a polygraph test from a reputable investigator and requests to put the results of this test into evidence. Apparently, Hermann "feel[s] that this report is a very important part of [his] case since [his] honor has been questioned over and over again." Dkt. 45, at 1. The Court denies this request for the following reasons.

In the Ninth Circuit, unstipulated polygraph examinations are not per se inadmissible, but such examinations are "inherent[ly] problematic." *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997). Further, "[t]he Ninth Circuit has 'long expressed its hostility to the admission of unstipulated polygraph evidence.'" *United States v. Vega-Rubio*, 2011 WL 220033, at *4–5 (D. Nev. Jan. 21, 2011) (citing *Cordoba*, 104 F.3d at 227). This is largely because, as the Supreme Court has explained, "there is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 309 (1998).

Hermann's motion, which includes the results of his polygraph examination, does nothing to address the above concerns regarding polygraphs. Additionally, the polygraph results are not authenticated, and "unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). Furthermore, many—if not all—of the questions asked on the examination have very little to do with Hermann's case against Stimson, but rather focus on disputes that Hermann had with other Stimson employees. For example, Hermann was allegedly asked "[d]o you feel you're being set up by PJ Orsburn and Perry O'Brien?" and "Did you ever jerked [sic] the steering wheel of Perry O'Brien's jeep while carpooling with him. [sic] as

he stated?" Dkt. 45, at 8. Though these questions involve some of the same actors as this lawsuit does, they do nothing to show that Stimson discriminated against Hermann based on his age. Thus, the Court finds good cause to deny Hermann's Motion Requesting a Daubert Hearing.

**B. Stimson's Motion for Summary Judgment**

Hermann alleges Stimson fired him because of his age, in violation of the ADEA and its state counterpart. He claims that other employees who are in their twenties, including Orsburn, participated in "horseplay" and other inappropriate behaviors at work but that Stimson only fired him, the forty-nine-year-old. Stimson counters that it never once considered Hermann's age, arguing that Orsburn's complaint against Hermann is the only "horseplay" complaint it every received during the relevant time period, and it decided to terminate Hermann's employment based on that complaint and its objective investigation, which led Stimson to believe that Hermann had violated its anti-harassment policies.

The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "Age discrimination can be established through either direct or indirect evidence." *Mousaw v. Teton Outfitters, LLC*, 2016 WL 5746344, at *4 (D. Idaho Sept. 30, 2016) (citing *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005)). However, simply proving age "played a role" in the decision to discharge an employee is not enough; rather, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

A court evaluates ADEA claims that are based on circumstantial evidence of

he stated?" Dkt. 45, at 8. Though these questions involve some of the same actors as this lawsuit does, they do nothing to show that Stimson discriminated against Hermann based on his age. Thus, the Court finds good cause to deny Hermann's Motion Requesting a Daubert Hearing.

**B. Stimson's Motion for Summary Judgment**

Hermann alleges Stimson fired him because of his age, in violation of the ADEA and its state counterpart. He claims that other employees who are in their twenties, including Orsburn, participated in "horseplay" and other inappropriate behaviors at work but that Stimson only fired him, the forty-nine-year-old. Stimson counters that it never once considered Hermann's age, arguing that Orsburn's complaint against Hermann is the only "horseplay" complaint it every received during the relevant time period, and it decided to terminate Hermann's employment based on that complaint and its objective investigation, which led Stimson to believe that Hermann had violated its anti-harassment policies.

The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "Age discrimination can be established through either direct or indirect evidence." *Mousaw v. Teton Outfitters, LLC*, 2016 WL 5746344, at *4 (D. Idaho Sept. 30, 2016) (citing *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005)). However, simply proving age "played a role" in the decision to discharge an employee is not enough; rather, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

A court evaluates ADEA claims that are based on circumstantial evidence of

discrimination by using the *McDonnell Douglass* burden-shifting framework. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (2008). The first prong of this framework requires the employee to establish a prima facie case of age discrimination. Once the employee has done so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. *Id.*

1. Prima Facie Case

A plaintiff can establish a prima facie case of discrimination by demonstrating that he: (1) was over forty-years-old; (2) was qualified for his position and performing his job satisfactorily; (3) experienced an adverse employment action; and (4) was treated less favorably than similarly situated employees outside his protected class, or that there were other circumstances surrounding the adverse employment action "giving rise to an inference of age discrimination." *Id*. at 1207–08 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000); *Harter v. Bonner Cty.,* 2018 WL 4775369, at *5 (D. Idaho October 2, 2018). "The requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *see also Chuang v. Univ. of Cal. Davis, Bd. of Trs*., 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.").

Stimson does not dispute that Hermann was over forty years old, qualified for his position and performing his job satisfactorily, and experienced an adverse employment action, *i.e.* his termination. The only issue is whether Stimson treated Hermann differently than similarly situated employees who were under forty years of age.

Hermann argues that Stimson treated him differently from the other employees who engaged in "horseplay," namely Orsburn. Hermann alleges that he and Orsburn were similarly situated employees because Orsburn engaged in similar "horseplay." Further, Hermann believes that Stimson previously disciplined Orsburn for sexual misconduct yet chose to not fire Orsburn for nearly identical behavior. Because Orsburn was in his twenties and Hermann was nearly fifty, Hermann believes that his age is the real reason Stimson decided to fire him but keep Orsburn.

The Court disagrees with Hermann. Hermann's situation can be distinguished from his fellow co-workers such as Orsburn. Multiple employees, including Orsburn and Hermann, engaged in "horseplay" prior to May 2017. The employees did their best to not behave inappropriately in front of management and no complaints were filed. However, when Higbee heard rumors about his employees' actions, he held a meeting and condemned the inappropriate behavior. At this point, nobody was fired. Nobody was interviewed. Stimson did not commence an investigation. Instead, Higbee simply stated that the behaviors needed to stop and took no further action. All employees stopped, with the exception of Hermann.

A month after Higbee's meeting, Orsburn complained to Higbee for the first time that Hermann not only continued to engage in "horseplay," but such behavior had become

MEMORANDUM DECISION AND ORDER – 10

worse. The Court notes that the *only* complaint of inappropriate sexual behavior Stimson received after Higbee's May 2017 meeting was the complaint against Hermann. While it is true that Higbee had a talk with Orsburn prior to Higbee's May 2017 meeting, it was not due to any complaints concerning Orsburn's sexual behavior. Rather, the talk concerned Orsburn's work performance and his lack of focus when Stimson did not give Orsburn a promotion. Dkt. 32–4, at 17.

In sum, Hermann has not established the minimal amount of proof necessary to show a prima facie case of age discrimination because he has not shown that Stimson treated him less favorably that similarly situated employees who were under forty. The evidence clearly shows that Hermann, like the other variously-aged employees, was not fired, singled out, or investigated when Higbee first caught wind of the group's "horseplay Stimson singled out Hermann for his behavior only after 1) Hermann continued to inappropriately behave after Higbee told the employees stop and 2) someone filed a complaint against Hermann for his actions. Stimson investigated Hermann's behavior due to this complaint and did not investigate any other employee's behavior because it never received a complaint about any other employee. Thus, Hermann has not shown that Stimson treated him any less favorably than its other, younger employees.

Additionally, Hermann has not argued—much less introduced any evidence to show—that there were other circumstances surrounding the adverse employment action "giving rise to an inference of age discrimination." *See Diaz*, 521 F.3d 1201, 1207–08. Noticeably absent from this case is any evidence of age discrimination. Hermann admitted in his deposition that he had always been treated kindly and fairly by Stimson management

and that he had never heard any remarks whatsoever relating to his age. The only legal foundation for Hermann's Motion for Summary Judgment—and, frankly, the entirety of his case against Stimson—is the circumstantial evidence that Stimson fired him and retained younger employees. This circumstantial evidence somewhat supports an inference of discrimination, but alone it does not give rise to an inference of discrimination. As such, Hermann cannot show a prima facie case of age discrimination because he cannot show that he was treated differently than similarly situated employees who were under forty. Granting Stimson's Motion for Summary Judgment would be proper based on this point alone.

2. *Legitimate, Non-Discriminatory Reason for Termination*

Even though Hermann has failed to meet his burden under the first prong of the *McDonnell Douglas* test, the Court finds it necessary to continue its analysis on the remaining two prongs. A full analysis of the *McDonnell Douglas* test is appropriate on motions for summary judgment. *O'Connor v. Cymer, LLC*, 772 F. App'x 602, 603 (9th Cir. 2019) ("The district court . . . did not analyze the remaining prongs of the *McDonnell Douglas* test. The district court erred in not doing so.") If the employee had established a prima facie case of age discrimination, the burden would shift to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. "To suffice under *McDonnell Douglas*, an employer's explanation must explain why the plaintiff 'in particular' was laid off." *Diaz*, 521 F.3d. at 1211.

Here, assuming that Hermann was able to clear the first prong of *McDonnell Douglas*, Stimson clearly satisfies the second prong. Stimson states that it fired Hermann

and that he had never heard any remarks whatsoever relating to his age. The only legal foundation for Hermann's Motion for Summary Judgment—and, frankly, the entirety of his case against Stimson—is the circumstantial evidence that Stimson fired him and retained younger employees. This circumstantial evidence somewhat supports an inference of discrimination, but alone it does not give rise to an inference of discrimination. As such, Hermann cannot show a prima facie case of age discrimination because he cannot show that he was treated differently than similarly situated employees who were under forty. Granting Stimson's Motion for Summary Judgment would be proper based on this point alone.

2. *Legitimate, Non-Discriminatory Reason for Termination*

Even though Hermann has failed to meet his burden under the first prong of the *McDonnell Douglas* test, the Court finds it necessary to continue its analysis on the remaining two prongs. A full analysis of the *McDonnell Douglas* test is appropriate on motions for summary judgment. *O'Connor v. Cymer, LLC*, 772 F. App'x 602, 603 (9th Cir. 2019) ("The district court . . . did not analyze the remaining prongs of the *McDonnell Douglas* test. The district court erred in not doing so.") If the employee had established a prima facie case of age discrimination, the burden would shift to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. "To suffice under *McDonnell Douglas*, an employer's explanation must explain why the plaintiff 'in particular' was laid off." *Diaz*, 521 F.3d. at 1211.

Here, assuming that Hermann was able to clear the first prong of *McDonnell Douglas*, Stimson clearly satisfies the second prong. Stimson states that it fired Hermann

because of Hermann's inappropriate behaviors. Stimson received a complaint that Hermann was opening bathroom stalls while other employees were occupying those stalls, making obscene comments and gestures, had intentionally touched a co-worker's behind, and had exposed himself while at work. Gonzales, Stimson's HR manager, conducted an investigation which corroborated the complaint. In fact, Hermann himself admitted in his deposition that he engaged in inappropriate behavior that violated Stimson's policies. Dkt. 32-3, at 23–26 (Hermann stating that the horseplay and joking he engaged in, including the time he "dry humped" Orsburn, violates Stimson's harassment policy). Thus, Stimson has articulated a legitimate, non-discriminatory reason for its decision to terminate Hermann's employment.

   3. *Pretext*

Assuming the employer has satisfied its burden of showing it had a legitimate reason for its actions, the burden then shifts to the employee. *Id.* The final stage of the *McDonnell Douglas* analysis requires a plaintiff to raise a genuine issue of fact concerning whether the employer's facially legitimate reasons are pretextual. *Diaz*, 521 F.3d at 1212. "In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce specific, substantial evidence of pretext." *Willis*, 26 F.3d at 890 (internal citations omitted).

Here, Hermann does not proffer any additional evidence to what he used to establish his prima facie case, to wit: Stimson fired Hermann (age forty-nine) but retained Orsburn (in his twenties). Even if this evidence was enough to establish a prima facie case—which the Court has concluded it does not—it is not enough to show that Stimson's reasons for firing Hermann were pretextual. *See Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir.

1991) ("[A] plaintiff cannot defeat summary judgment simply by making out a prima facie case."). Again, there is nothing in the record that shows that Stimson management ever referred to any employee's age at any time. There is no evidence of disparaging remarks, favoritism, or preferential treatment based on age. Indeed, were it not for Hermann's causes of action, the Court would have struggled to know that this case involved claims for age discrimination. Clearly, Hermann cannot establish that Stimson's reason for firing him was pretextual.

   4. *Summary*

Under the *McDonnell Douglas* test, Hermann has failed to show a prima facie case of age discrimination. Hermann has not presented evidence to show that Stimson treated him less favorably than similarly situated, younger employees because Stimson treated him the same as every other employee while multiple employees were engaged in "horseplay." Further, after the May 2017 meeting with Higbee, there were no other similarly situated employees because Hermann was the only employee Stimson received a complaint about. Even if Hermann could show a prima facie case, Stimson states that it fired him because of his inappropriate behavior, which is a legitimate, non-discriminatory reason for firing him. Lastly, Hermann has failed to show that this reason is pretextual because he has not produced evidence that Stimson considered his age at all throughout its investigation and subsequent decision to fire him. Thus, the Court hereby GRANTS Stimson's Motion for Summary Judgment and DENIES Hermann's Motion for Summary Judgement.

**C. Hermann's Motion for Summary Judgment**

   1. *There is No Genuine Factual Dispute Under Rule 56*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1); *see also Far Out Productions, Inc.*, 247 F.3d at 997. Throughout his briefing, Hermann makes only self-serving contentions that he did not engage in inappropriate behaviors but does not cite to any deposition or document for support. Nor did Hermann submit an affidavit or declaration in support of his motion for summary judgment. Thus, insofar as Hermann is disputing material facts in the case, the Court will not consider them "disputed" pursuant to Rule 56 if the record does not support the contentions.[3]

2. *Review of Hermann's Motion*

The Court independently reviews the record but relies on the same legal reasoning in deciding Hermann's Motion for Summary Judgment as it did in granting Stimson's Motion for Summary Judgment. As the Court granted summary judgment to Stimson while interpreting the facts in a light most favorable to Hermann, it goes without saying that the Court cannot rule against Stimson construing the facts in a light most favorable to it. As such, Hermann's Motion for Summary Judgment is DENIED.

## V. CONCLUSION

Due to the contents of Hermann's *pro se* briefing in this case, the Court believes it

---

[3] The Court also notes that Hermann currently disputes many of the facts contained in the record. However, Hermann contradicts himself numerous times. Many of the facts he disputes are also facts that he admitted to during his deposition. For example, Hermann now asserts that he never engaged in improper conduct while at work. *See generally* Dkts. 35, 44. However, during his deposition Hermann admitted to participating in "horseplay" while at Stimson and specifically admitted to touching a co-worker's backside. Dkt. 32–3, at 23, 25-26, 43. Some of these contradictions occur within Hermann's own briefing. Dkt. 44, at 3. For instance, Hermann states that "Stimson had a no horseplay meeting with everyone in the breakroom," but then claims few lines later that Stimson management never addressed his behavior. *Id.* Hermann makes these disputes and contradictions throughout his briefing.

is necessary to clarify the scope of this decision and lawsuit. It appears that Hermann harbors feelings of hostility or resentment towards the other Stimson employees he believes should have been fired or should not have "ratted" him out. Because of Stimson's investigation and subsequent decision to fire him, Hermann seems to think that he is on some sort of trial for his misbehavior while he was employed with Stimson. He is not. It is not the role of the Court in this lawsuit to decide if Hermann is a "sexual predator." Dkt. 34, at 5. Neither will the Court determine who instigated the "horseplay," nor hold accountable those who "snitched" on their co-workers. Instead, at this time the Court need only determine if Hermann has presented evidence sufficient to show that a reasonable juror could find that Stimson violated the ADEA or its state counterpart when Stimson terminated Hermann's employment. The Court finds that Hermann has failed to do so.

Hermann's general denials and disputes regarding the facts of this case do not create a genuine issue because they are not supported—but are actually belied—by the record. Further, under the *McDonnell Douglas* test, Hermann has not established a prima facie case of age discrimination because he has not shown that Stimson treated him less favorably than other, younger employees. Even if he had, Stimson has given a legitimate, non-discriminatory reason for Hermann's termination—his inappropriate behavior at work—and Hermann has not provided evidence sufficient to show that this reason is pretextual. As such, summary judgment in favor of Stimson is appropriate.

## V. ORDER

**IT IS HEREBY ORDERED THAT:**

1. Stimson's Motion for Summary Judgment (Dkt. 32) is GRANTED.

2. Hermann's Motion for Summary Judgment (Dkt. 35) is DENIED.

3. Hermann's Motion to Seal the Motion for Summary Judgment (Dkt. 36) is GRANTED.

4. Hermann's Motion Requesting a Daubert Hearing (Dkt. 45) is DENIED.

5. This case is dismissed in its entirety and closed.

6. A separate judgment will be issued

DATED: March 23, 2020

_____
David C. Nye
Chief U.S. District Court Judge